[Cite as *Jones v. Davis*, 2024-Ohio-2972.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |  |
|---|---|---|---|
| KAREN JONES, Administrator of the Estate of Ance Jones, Deceased, | : | APPEAL NO. | C-230658 |
|  |  | TRIAL NO. | A-2200190 |
| Plaintiff-Appellant, | : |  |  |
|  | : | *O P I N I O N.* |  |
| vs. | : |  |  |
| JAMIE MARK DAVIS, | : |  |  |
| CITY OF CINCINNATI, | : |  |  |
| and | : |  |  |
| RUMPKE SANITARY LANDFILL, INC., | : |  |  |
| Defendants-Appellees. | : |  |  |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: August 7, 2024

*Law Offices of Daniel R. Mordarski LLC, Daniel R. Mordarski, Beckman Weil Shepardson LLC, Alison De Villiers, Kristen M. Myers*, and *Taylor A. Dreigon*, for Plaintiff-Appellant,

*Emily Smart Woerner*, City Solicitor, *Scott M. Heenan*, Senior Assistant City Solicitor, and *Kevin M. Tidd*, Senior Assistant City Solicitor, for Defendants-Appellees Jamie Mark Davis and City of Cincinnati,

*Michael T. Cappell*, *Keating Muething & Klekamp PLL*, and *Sarah V. Geiger*, for Defendant-Appellee Rumpke Sanitary Landfill, Inc.

**CROUSE, Judge.**

{¶1}   Plaintiff-appellant Karen Jones ("Jones"), as the administrator of the estate of her late husband Ance Jones ("Ance"), appeals from the trial court's summary judgment in favor of defendants-appellees city of Cincinnati and city employee Jamie Mark Davis (collectively, the "city defendants"), as well as defendant-appellee Rumpke Sanitary Landfill, Inc., ("Rumpke"). Ance was found deceased at Rumpke's landfill several hours after an incident where he was knocked down by trash being ejected from a city of Cincinnati garbage truck and then partially buried in trash and sludge. Jones brought this wrongful-death suit alleging that Rumpke and the city defendants caused Ance's death through their negligence. For the following reasons, we reverse the judgment of the trial court and remand the cause for further proceedings.

## I. Factual and Procedural History

{¶2}   On July 8, 2020, Ance was at the Rumpke landfill in Colerain Township to dump "sludge" on behalf of his employer, Superior Environmental Solutions, Inc. While at the "working face" of the landfill,[1] Ance was struck by trash dumped by a city of Cincinnati garbage truck, which caused him to fall. Ance was partly covered by trash and sludge. Rumpke employees removed Ance from the garbage and summoned emergency responders. Ance declined medical treatment and returned to his truck. Ance drove to another part of the landfill where drivers often park to complete paperwork or attend to other tasks before leaving the landfill. However, Ance did not leave the landfill. At around 1:00 a.m. the following day, Rumpke personnel found Ance deceased in his truck. The Hamilton County coroner eventually determined that Ance died from "an acute cardiac event caused by arteriosclerotic cardiovascular

---

[1] In its brief, Rumpke described the "working face" of the landfill as "the area of the landfill where garbage trucks drive up and dump their garbage loads at the landfill."

disease which was exacerbated by the physical and emotional distress of having a large pile of garbage and sludge dumped on him."

{¶3} Jones brought this suit in January 2022. Following discovery, the city defendants and Rumpke filed their motions for summary judgment. In their motion, the city defendants argued that they are entitled to summary judgment because (1) they are immune from suit pursuant to R.C. Chapter 2744 and (2) Jones cannot show that the incident at the landfill proximately caused Ance's death. Additionally, Davis argued that Jones cannot show that he was the driver of the city garbage truck that dumped trash on Ance.

{¶4} In response, Jones argued that the city is not entitled to immunity because the motor-vehicle exception under R.C. 2744.02(B)(1) applies and that Davis is not entitled to immunity because the exception for reckless conduct under R.C. 2744.03(A)(6) applies. Regarding the cause of Ance's death, Jones supported her opposition to summary judgment with affidavits from the deputy coroner who examined Ance and a cardiologist, both of whom opined, to a reasonable degree of medical certainty, that the stress of the incident at the landfill, combined with Ance's preexisting heart disease, caused his death. Finally, Jones argued that the circumstantial evidence supports an inference that Davis was the driver of the truck that dumped garbage on Ance.

{¶5} In its motion, Rumpke argued that it is entitled to summary judgment because (1) Jones has not offered any expert testimony to establish the duty of care that Rumpke allegedly owed Ance, and therefore Jones has failed to establish that Rumpke owed any duty to Ance; and (2) Jones cannot show that Rumpke's alleged negligence proximately caused Ance's death.

3

{¶6}     In response, Jones argued that the duty Rumpke owed Ance was the same duty of ordinary care owed by any owner of property to an invitee, and that no expert testimony is required to establish the existence of this duty. Jones again pointed to the affidavits of the deputy coroner and the cardiologist to counter Rumpke's argument that its alleged negligence was not the proximate cause of Ance's death.

{¶7}     The trial court ruled that the city defendants were entitled to political-subdivision immunity under R.C. Chapter 2744. In its immunity analysis, the trial court determined that there was no factual dispute that the city garbage truck was parked when it dumped garbage on Ance. Applying *Reck v. Dayton*, 2d Dist. Montgomery No. CA 7085, 1981 Ohio App. LEXIS 13124 (Sept. 4, 1981), and *Doe v. Marlington Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706, the trial court determined that the dumping of garbage from a garbage truck did not constitute "operation of [a] motor vehicle" for the purposes of R.C. 2744.02(B)(1). Accordingly, the trial court granted summary judgment to the city defendants.

{¶8}     The trial court also granted summary judgment to Rumpke. In ruling on Rumpke's motion, the trial court found that there was no evidence in the record to establish a duty that Rumpke owed Ance. The trial court focused its analysis on Jones's statement that Rumpke should have had a "spotter" to direct the flow of traffic near the working face of the landfill. The trial court found that nothing in the record supports an argument that a spotter is required to be present at all times at a landfill. Further, the trial court reasoned:

> There is no set of facts that would lead Rumpke to foresee any person
>
> having a heart attack because of the lack of a spotter. It is foreseeable

that a person could be hit by a truck, it is even foreseeable that garbage
could be dumped on a person. However, in this case, there was no way
for Rumpke to foresee a person having a major heart attack hours after
a minor dumping incident.

Accordingly, the trial court ruled that Rumpke was entitled to summary judgment because it owed no duty to Ance, and even if it did, Jones could not show that Rumpke's alleged negligence was the proximate cause of Ance's death.

{¶9} This appeal timely followed.

## II. Analysis

{¶10} In two assignments of error, Jones argues that the trial court erred in granting summary judgment to Rumpke and to the city defendants.

{¶11} This court reviews a trial court's grant of summary judgment de novo. *Collett v. Sharkey*, 1st Dist. Hamilton No. C-200446, 2021-Ohio-2823, ¶ 8. "Summary judgment is appropriately granted when there exists no genuine issue of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion that is adverse to that party." *Id.*, citing *State ex rel. Howard v. Ferreri*, 70 Ohio St.3d 587, 589, 639 N.E.2d 1189 (1994).

{¶12} When a party moves for summary judgment on the ground that the nonmoving party cannot prove its case, the moving party "bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996); *see Ditech Fin., LLC v. Balimunkwe*, 1st Dist.

5

Hamilton No. C-180445, 2019-Ohio-3806, ¶ 6. The moving party "must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment." *Dresher* at 292-293. Such materials include "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact." Civ.R. 56(C).

{¶13} If the moving party satisfies this initial burden, "the nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, including verified pleadings, but must 'set forth specific facts' by the means listed in the rule, showing that a triable issue of fact exists." *Ditech Fin.* at ¶ 6, citing *Dresher* at 293.

{¶14} To succeed on a negligence claim, a plaintiff must establish "the existence of a duty, a breach of that duty, and an injury that was proximately caused by the breach." *Rieger v. Giant Eagle, Inc.*, 157 Ohio St.3d 512, 2019-Ohio-3745, 138 N.E.3d 1121, ¶ 10.

### A. First Assignment of Error

{¶15} In her first assignment of error, Jones argues that the trial court erred by granting summary judgment to Rumpke. The trial court found that there is nothing in the record that establishes a duty on the part of Rumpke.

{¶16} Whether a legal duty exists is a question of law to be decided by the court. *Frank v. Univ. of Cincinnati Med. Ctr.*, 2023-Ohio-1255, 218 N.E.3d 171, ¶ 10 (1st Dist.). We review a trial court's decision on duty de novo. *Id.*

{¶17} Jones argues that Ance was an invitee on Rumpke's premises, and therefore, Rumpke owed Ance a duty under a theory of "premises liability." Premises liability is merely one source of a duty under the general rubric of negligence. *See, e.g.,*

6

*Gilliam v. Rucki*, 2023-Ohio-1413, 213 N.E.3d 819, ¶ 9 (6th Dist.) ("Premises liability is a form of negligence, which generally requires the plaintiff to establish: (1) a duty of care by the defendant to the plaintiff, (2) breach of that duty, and (3) injury caused directly and proximately resulting from the breach.").

**{¶18}** Rumpke argues that Jones did not plead a theory of premises liability or raise premises liability until after Rumpke filed its motion for summary judgment. Accordingly, Rumpke contends that it need not address Jones's premises-liability argument on summary judgment because the "plaintiff cannot fulfill her burden under Civ.R. 56 merely by asserting new claims in response to a properly supported motion for summary judgment." Rumpke argues that Jones only pleaded that Rumpke was negligent in its operation of its landfill. Therefore, Rumpke contends that expert testimony is needed to establish the standard of care for proper landfill operation. By failing to present an expert report on the duty of care owed by a landfill operator, Rumpke claims that Jones has failed to establish a duty, and summary judgment was appropriate.

**{¶19}** Jones responds that she did put Rumpke on notice that she would be pursuing a premises-liability negligence claim and no expert testimony is required to establish a premises-liability duty of care because this is the basic duty owed by any landowner to an invitee under Ohio law.

**{¶20}** In her complaint, Jones's allegations concerning Rumpke's conduct included:

> 9. Defendant Rumpke negligently operated the landfill by failing to have spotters, proper traffic patterns, and/or visibility for drivers dropping off garbage.

* * *

11. As a direct and proximate result of the negligence and recklessness of the Defendants, Ance Jones was found dead on July 9, 2020.

**{¶21}** Jones argues that by pleading that Rumpke was negligent, Rumpke had adequate notice that Jones may argue a duty based on premises liability. Jones argues that nothing more is required by the notice-pleading standard under Civ.R. 8.

**{¶22}** We agree. All that is required of a plaintiff at the pleading stage is a "short and plain statement of the claim showing" entitlement to relief. Civ.R. 8(A). The complaint "need not state with precision all elements that give rise to a legal basis for recovery as long as fair notice of the nature of the action is provided." *Fancher v. Fancher*, 8 Ohio App.3d 79, 83, 455 N.E.2d 1344 (1st Dist.1982), quoting 5 Wright & Miller, *Federal Practice & Procedure: Civil*, Section 1216, at 120-123 (1969); *Ri'Chard v. Bank of Am.*, 1st Dist. Hamilton No. C-190677, 2020-Ohio-4688, ¶ 8. " 'Notice pleading' under Civ.R. 8(A) and 8(E) requires that a claim concisely set forth only those operative facts sufficient to give 'fair notice of the nature of the action.' " *Ri'Chard* at ¶ 8, quoting *Wildi v. Hondros College*, 10th Dist. Franklin No. 09AP-346, 2009-Ohio-5205, ¶ 12.

**{¶23}** In this case, Jones pleaded that Rumpke was negligent and identified certain measures that Rumpke failed to use to ameliorate the dangerous conditions on its premises. This is sufficient to give Rumpke notice that Jones was arguing a duty based on premises liability.

**{¶24}** Further, Jones's arguments in response to Rumpke's motion to exclude Jones's liability expert, Neal Bolton, put Rumpke on notice that Jones was making a general negligence claim. After Jones did not produce an expert report from Bolton

8

by the deadline, Rumpke filed a motion to exclude Bolton as a witness. In her response to Rumpke's motion, Jones stated that she would not use Bolton in her case-in-chief, but rather sought to have his testimony available for rebuttal purposes only. Regarding her case-in-chief, Jones stated:

> Unlike the medical malpractice action in *Nakoff* [*v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 662 N.E.2d 1 (1996)], expert testimony is not required to prove liability in this case. There is no expert requirement to prove a general negligence claim because the standard of care for general negligence is the reasonable person standard. *Crawford v. Wolfe*, 4th Dist. Scioto No. 01CA2811, 2002-Ohio-6163, ¶ 21. In this case, Plaintiff made the decision not use an expert in her case-in-chief to prove liability. The jury can determine that the Defendants were negligent without the need for expert testimony.

**{¶25}** Although the trial court agreed with Rumpke and granted the motion to preclude Bolton from testifying at trial, Jones's argument demonstrates that she intended to argue her case based on a general duty of care prior to Rumpke's motion for summary judgment.

**{¶26}** Accordingly, we hold that Jones was entitled to argue her theory of premises liability in her response to Rumpke's motion for summary judgment.

**{¶27}** The duty of care in a premises-liability case is defined by the status of the plaintiff on the property: trespasser, licensee, or invitee. *Price v. Verizon Cellular Sales*, 1st Dist. Hamilton No. C-230080, 2023-Ohio-4621, ¶ 11. "Invitees are business visitors to the property by invitation, express or implied, to provide an economic benefit to the owner." *Id.*

**{¶28}** In general, a landowner owes its invitees "a duty to maintain the premises in a reasonably safe condition," which includes "a duty to warn of latent or hidden dangers." *Lambert v. Up Cincinnati Race, LLC*, 2022-Ohio-4699, 204 N.E.3d 782, ¶ 10 (1st Dist.). As an exception to this duty, a landowner need not warn an invitee of an open-and-obvious hazard because the hazard itself serves as a warning. *Id.* at ¶ 12.

**{¶29}** A business owner is not, however, an insurer of the invitee's safety. *See, e.g., Wheatley v. Marietta College*, 2016-Ohio-949, 48 N.E.3d 587, ¶ 58 (4th Dist.). The duty of ordinary care does not require the landowner to protect its invitees from harm caused by third parties which the owner could not, in the exercise of ordinary care, foresee. *See Cassano v. Antenan-Stewart*, 87 Ohio App.3d 7, 10, 621 N.E.2d 826 (12th Dist.1993). However, the owner does owe its invitees a duty to warn its invitees when it is aware of the likelihood of negligent conduct by third parties on the premises. *Id.* at 9-10, citing *Holdshoe v. Whinery*, 14 Ohio St.2d 134, 237 N.E.2d 127 (1968), paragraph four of the syllabus.

**{¶30}** It is uncontroverted that Rumpke owns and operates the landfill where Ance was subjected to the garbage-dumping incident and subsequently passed away. It is similarly uncontroverted that Ance was an invitee on Rumpke's premises.

**{¶31}** In her opposition to Rumpke's motion for summary judgment, Jones cited multiple depositions showing that the safety guidelines requiring trucks to space at least 15 feet apart and park parallel to each other is necessary to prevent, among other harms, garbage from being ejected onto people on the working face. Additionally, Jones cited depositions showing that Rumpke is aware that there is widespread failure to follow these safety precautions. Based on this knowledge, Jones

argues, Rumpke had a duty to warn its invitees of the danger posed by third parties using the landfill and to take steps to ameliorate the risk of harm posed by the negligence of other drivers.

**{¶32}** Under these circumstances, Jones adequately showed the existence of a duty Rumpke owed Ance: Rumpke owed Ance a duty to exercise reasonable care, just like any property owner owes invitees on the premises.

**{¶33}** Finally, Jones challenges the trial court's determination that Rumpke's alleged negligence did not proximately cause Ance's death.

**{¶34}** Rumpke argues that Ance's death was primarily caused by his preexisting, substantial coronary artery disease, which had already manifested as chest pains before the garbage-dumping incident. Absent the preexisting coronary artery disease, Ance would not have suffered the fatal cardiac event after the garbage-dumping incident.[2]

**{¶35}** In response to Rumpke's argument on summary judgment, Jones offered affidavits from two doctors, both of which state that, to a reasonable degree of medical certainty, the stressful incident at the landfill was a proximate cause of Ance's death.

**{¶36}** "There may be more than one [proximate] cause of the [death]. The fact that some other cause combined with the negligence of a defendant in producing the [death] does not relieve a defendant from liability so long as the plaintiff proves that

---

[2] On appeal, Rumpke does not argue foreseeability, as discussed in the trial court's judgment, but rather limits its argument to proximate causation. This is understandable because "[t]he well-settled rule in Ohio is that a defendant need not anticipate the particular harm or the severity of the injury that results from the negligent act. Instead, it is sufficient that *an* injury was reasonably foreseeable." (Emphasis sic.) *Sickles v. Jackson Cty. Hwy. Dept.*, 196 Ohio App.3d 703, 2011-Ohio-6102, 965 N.E.2d 330, ¶ 28 (4th Dist.), quoting *Oiler v. Willke*, 95 Ohio App.3d 404, 412, 642 N.E.2d 667 (4th Dist.1994).

the conduct of the defendant was a substantial factor in producing the harm." *Ohio Jury Instructions*, CV Section 405.01(B) (Rev. Feb. 11, 2017); *see Ruckman v. Smith*, 2022-Ohio-1813, 190 N.E.3d 707, ¶ 60 (11th Dist.) (collecting cases). In a case with sufficient medical expert testimony suggesting that the decedent's death was "substantially hastened" by injury, the plaintiff is entitled to have the question resolved by the factfinder and to have a jury instruction on dual causation. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 590, 575 N.E.2d 828 (1991).

{¶37} Although it appears unlikely that Ance would have died following the incident at the landfill absent his preexisting coronary artery disease, Jones has offered two affidavits of medical experts claiming that, to a reasonable degree of medical certainty, the incident was a substantial factor in causing his death. Accordingly, causation is a question of fact for the jury.

{¶38} Because we have held that Rumpke did owe a duty of care to Ance, and there are genuine issues of material fact inappropriate for resolution on summary judgment, the trial court erred in granting summary judgment to Rumpke. We therefore sustain Jones's first assignment of error.

### B. *Second Assignment of Error*

{¶39} Jones argues in her second assignment of error that the trial court erred by granting summary judgment to the city defendants. Jones argues that the city is not entitled to political-subdivision immunity under R.C. Chapter 2744 based on the exception to immunity for negligent operation of a motor vehicle, found under R.C. 2744.02(B)(1). Additionally, Jones argues that Davis is not entitled to immunity because he acted recklessly, which strips him from immunity under R.C. 2744.03(A)(6)(b).

{**¶40**} Determining whether the city is entitled to immunity under R.C. Chapter 2744 requires a three-tiered analysis. *Evans v. Cincinnati*, 1st Dist. Hamilton No. C-120726, 2013-Ohio-2063, ¶ 5. First, the city is presumed to be entitled to immunity for any "injury * * * allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." *Id.*, quoting R.C. 2744.02(A)(1). Next, the city is not entitled to immunity if one of the exceptions set forth in R.C. 2744.02(B) applies. *Id.* Finally, if one of the exceptions applies, the city may set forth one of the defenses listed in R.C. 2744.03(A) to regain immunity. *Id.*

{**¶41**} Both sides agree that the city was engaged in the "collection and disposal of solid wastes," which is an enumerated governmental function under R.C. 2744.01(C)(2)(k), and therefore the city is presumed at the first step of the analysis to be entitled to immunity.

{**¶42**} Jones argues, however, that Ance was injured by a city employee's negligent operation of a motor vehicle, one of the enumerated exceptions to immunity under R.C. 2744.02(B). R.C. 2744.02(B)(1) provides that the city is liable for an injury "caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority." The city does not assert any of the defenses under R.C. 2744.03(A). Accordingly, Jones argues, immunity should be denied.

{**¶43**} The only material question in determining whether the city is entitled to immunity in this case is whether the operation-of-a-motor-vehicle exception applies. R.C. Chapter 2744 does not provide a definition of "operation" with respect to motor vehicles. However, the Ohio Supreme Court has consistently held that "the

exception to immunity in R.C. 2744.02(B)(1) for the negligent operation of a motor vehicle pertains only to negligence in driving or otherwise causing the vehicle to be moved." *McConnell v. Dudley*, 158 Ohio St.3d 388, 2019-Ohio-4740, 144 N.E.3d 369, ¶ 27, quoting *Doe*, 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706, at ¶ 26; *see also Sallee v. Watts*, 1st Dist. Hamilton No. C-130122, 2014-Ohio-717 (applying the *Doe* definition of "operation").

{¶44} The city argues that manipulation of the garbage-dumping apparatus does not constitute "operation of a motor vehicle" for the purposes of R.C. 2744.02(B)(1). The city's argument centers on the distinction between the motor-vehicle components of the garbage truck and the separate garbage-dumping apparatus. The city draws our attention to *Reck*, 2d Dist. Montgomery No. CA 7085, 1981 Ohio App. LEXIS 13124. In *Reck*, the trial court assessed whether the use of a hydraulic tailgate mounted on a truck, while that truck was parked on a public highway, constituted "operation of any vehicle upon the public highways of this state." *Reck* at 5; \ former R.C. 701.02. The court concluded that the immunity statute used the term "operation" to mean "moving or driving of a vehicle for the purpose for which such vehicle itself was intended." *Id.* at 6. The court specifically excluded the "operation of whatever foreign equipment may be mounted on a truck if unrelated to its movement on the highway as a vehicle of transportation." *Id.* Although the municipal-immunity law in effect at the time of *Reck* differs somewhat from the current law, the factors considered by the *Reck* court in reaching its decision do not rely on the differences.

{¶45} We need not rely on *Reck* to decide this case because Jones argues that the city's truck driver was negligent in parking the truck too close to Ance and at an

14

angle. Jones supported this assertion with the deposition of Rumpke employee Bryan Holbrook and the accompanying exhibits. By parking too close to Ance's truck, the city truck driver created the conditions to dump garbage on Ance.

{¶46} We agree that backing up the truck to park, in preparation to offload garbage, clearly constitutes "driving or otherwise causing the vehicle to be moved." *See McConnell*, 158 Ohio St.3d 388, 2019-Ohio-4740, 144 N.E.3d 369, at ¶ 27. And a reasonable jury could conclude that it was the negligent parking that caused garbage to be dumped on Ance.

{¶47} We hold therefore that Jones has produced sufficient evidence of a genuine issue of material fact that the city is not entitled to immunity at this stage of the proceedings.

{¶48} The issue of the city's immunity, however, does not decide the issue of Davis's immunity as an employee of the city. The trial court appears to have granted immunity to Davis based on its conclusion that the city is entitled to immunity. However, the standards for immunity for the city and for Davis are different because only R.C. 2744.03(A)(6) and (7) address immunity for political-subdivision employees. The trial court did not analyze Davis's immunity under R.C. 2477.03(A)(6) or (7).

{¶49} Under R.C. 2744.03(A)(6), Davis is entitled to immunity unless (a) his acts or omissions were manifestly outside the scope of his employment or official responsibilities; (b) his acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (c) civil liability is expressly imposed upon him by a section of the Revised Code. Jones alleged in her complaint that Davis was acting at all times within the scope of his employment and identifies no section of the Revised

Code that expressly imposes liability on Davis. Therefore, Davis can only be liable if Jones can demonstrate that he acted "with malicious purpose, in bad faith, or in a wanton or reckless manner." *See* R.C. 2744.03(A)(6)(b).

**{¶50}** Ordinarily, the question of whether an employee of a political subdivision is entitled to immunity under R.C. 2744.03(A)(6) is a question of law to be decided by the court. *Frank v. Southwest Ohio Regional Transit Auth.*, 1st Dist. Hamilton No. C-200015, 2020-Ohio-5497, ¶ 16. However, where there is a factual dispute as to whether the employee acted in a wanton or reckless manner, the question is a factual question for the jury. *Id.*

**{¶51}** "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 33. "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at ¶ 34.

**{¶52}** In their motion for summary judgment, the city defendants state, without further detail, that Davis is entitled to immunity because "[t]he record suggests nothing more than negligence." In response, Jones argues that such a bare allegation does not satisfy Davis's burden under the summary-judgment standard.

**{¶53}** The Ohio Supreme Court has held that "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, *and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim*." (Emphasis sic.) *Dresher*, 75 Ohio St.3d at 296, 662 N.E.2d 264.

**{¶54}** Because the city defendants did not set forth any factual basis in support of their assertion that there was no evidence in the record to support anything more than negligence, the trial court could not properly grant summary judgment in Davis's favor on this basis. *See id.* ("Where, as here, the moving party does not satisfy its initial burden under Civ.R. 56, the motion for summary judgment must be denied.").

**{¶55}** Although the city defendants did not meet their burden to demonstrate entitlement to summary judgment, Jones argued the existence of a genuine issue of material fact as to whether Davis acted "in a wanton or reckless manner" in her memorandum opposing summary judgment.

**{¶56}** Jones points out that the city policy for garbage truck drivers requires that drivers (1) allow 15 feet of distance between trucks at the working face of the landfill, (2) park parallel to other trucks at the working face, and (3) never wear earphones while on the working face. Jones cites to deposition testimony from city officials to show that (1) the purpose of the policies is to prevent a city truck from ejecting trash onto another person or truck and (2) that Davis had knowledge of these policies because the city trains each driver on the substance of the policies. Additionally, Jones points to deposition testimony from Davis to show that Davis violated the 15-foot rule and was wearing earphones the entire time he was at the landfill. Deposition testimony from Rumpke employees shows that the driver who parked next to Ance was closer than 15 feet and was parked at an angle.

**{¶57}** While the violation of a statute, ordinance, or departmental policy enacted for the safety of the public is not per se willful, wanton, or reckless conduct, it "may be relevant to determining the culpability of a course of conduct." *Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, at ¶ 37. However, "[w]ithout

evidence of an accompanying knowledge that the violations 'will in all probability result in injury,' evidence that policies have been violated demonstrates negligence at best." (Internal citations omitted.) *Id*. at ¶ 38.

{**¶58**} We hold that Jones has demonstrated that there is a genuine issue of material fact whether Davis acted "in a wanton or reckless manner," which would disqualify him from receiving immunity under R.C. 2744.03(A)(6)(b). Therefore, summary judgment is inappropriate, and the issue must be decided by the jury at trial.

{**¶59**} The city defendants acknowledge that there is sufficient witness testimony that the truck parked next to Ance was a city garbage truck, as indicated by the city's insignia on the side of the truck. However, the city defendants argue that Jones cannot show that Davis was the driver of the city garbage truck that was involved in the incident. The city defendants supported their argument with deposition testimony from Rumpke employees that (1) there were at least three city garbage trucks that entered the Rumpke landfill in the time between Ance's arrival and the incident, and (2) neither Davis nor Marvin Parks, Davis's helper in the truck, recalled anything out of the ordinary happening while dumping trash at the landfill.

{**¶60**} Jones supports her argument that Davis was the driver of the city garbage truck with a timeline of the arrival of various city trucks and suggests that the timing supports an inference that only Davis's truck could have been the one to dump garbage on Ance.

{**¶61**} Jones also cites deposition testimony containing material that the city defendants argue is inadmissible hearsay. However, the trial court did not reach a decision on the admissibility of the testimony. Rather than decide the question of admissibility in the first instance, we rely only on the undisputed evidence to reach our

decision.

**{¶62}** The dumping incident occurred at 2:01 p.m. Rumpke's records show that Ance passed the scale house at 1:36:31 p.m. Davis's garbage truck passed the scale house at 1:43:10 p.m. Two more city garbage trucks passed the scale house at 1:48:25 p.m. and 1:52:47 p.m. Rumpke's records do not show any other city garbage trucks of the type involved in the incident as going past the scale house between 1:30 p.m. and 2:01 p.m. When there is no traffic between the scale house and the working face, the drive takes from five to ten minutes. Depending on the amount of traffic, the wait time to use the working face may range from 20 minutes to 2 hours.

**{¶63}** Based on this evidence, a jury could conclude from the timing of Davis's arrival and the time to drive to the working face that Davis's truck is the only city garbage truck that could have been present for the dumping incident. Accordingly, Jones has shown a genuine issue of material fact exists as to whether Davis was the driver of the truck. As a result, summary judgment is inappropriate as to this issue.

**{¶64}** Finally, Jones also argues that summary judgment is inappropriate to resolve the question of whether the city defendants' actions proximately caused Ance's death. The analysis is no different for the city defendants than for Rumpke. Accordingly, this issue is for the jury to decide.

**{¶65}** Because we have held that the city defendants are not entitled to immunity at this stage, and there are genuine issues of material fact inappropriate for resolution on summary judgment, the trial court erred in granting summary judgment to the city defendants. We therefore sustain Jones's second assignment of error.

### III. Conclusion

**{¶66}** For the foregoing reasons, we reverse the judgments of the trial court

granting summary judgment to Rumpke and the city defendants. We remand the cause to the trial court for further proceedings consistent with this opinion.

Judgments reversed and cause remanded.

**ZAYAS, P.J.**, and **KINSLEY, J.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.